Burks, J.,
delivered the opinion of the court.
The appellant filed his bill in the circuit court of Patrick county against the appellee to set aside a deed made by the clerk of the county court of said county, conveying to the appellee land claimed by him as a *792 purchaser at a sheriff’s sale of land, returned delinquent for non-payment of taxes. .The defendant filed a demurrer and answer to the bill. Upon argument the demurrer was sustained, and the defendant, on liberty granted for the purpose, filed an amended bill referring to and making the original bill a part thereof, to which the defendant also demurred without answering; By decree of the 4th of November, 1875, this demurrer was also sustained, and the bill of the complainant dismissed. An appeal from this decree allowed the complainant, brings the ease here.
The demurrer necessarily admits the truth of the facts stated in the bill, so far as they are relevant and well pleaded.
Whether the facts stated in the bill, thus admitted by the demurrer to be true, entitle the appellant to the relief prayed, is the only question to be now determined.
The two bills considered, as they may be, together, .allege, in substance, that the complainant is the owner of two tracts of land in Patrick county, conveyed to him by one Thomas Boyles, by deed dated 2nd June, 1859, recorded in said county on the day of its date, which lands were derived by said Boyles by descent from Lucinda Barker—a copy of which deed is filed as a part of the bill; that a short time after the execution of the deed, the complainant took • possession of said lands and has thence hitherto held and still holds such possession; that on the 24th of September, 1860, the sheriff of Patrick county exposed to sale, as delinquent for the non-payment of taxes, several' tracts of land, charged in the name of the said Lucinda Barker, amongst which was a tract containing three hundred and sixty acres, at the price of $9.30, as shewn by a copy of the sheriff’s official return of sales filed as a *793 part of the bill; that the defendant executed to the sheriff his receipt for the $9.30, the purchase money for the one hundred and fifty acres of land aforesaid, and, in the year 1874, caused the one hundred and fifty acres to be surveyed, and in the same year the clerk of the county court of Patrick, in accordance with the survey, executed to the defendant a deed for the land so surveyed. Certified copies of the report of the survey and the deed of the clerk are filed as parts of the bill; from which it appears, that the report of the survey was made by the surveyor of Patrick county, was duly certified, examined, and together with the deed duly recorded. The bill further alleges that in laying off the one hundred and fifty acres, the defendant caused the surveyor to locate and survey the same within the boundaries of the two tracts aforesaid belonging to the complainant; that if there was any such tract as the tract aforesaid of three hundred and sixty acres, it was a different tract from those conveyed as aforesaid to the complainant, and the defendant therefore had no right to have the survey and conveyance of said one hundred and fifty acres within the boundaries of complainant’s said lands.
The bill further alleges, that the sale by the sheriff under which the defendant claims, was irregular and void, because as shewn by the official return of sales, it does not appear for what year or years the land sold was delinquent.
The prayer of the bill is, that, the deed of the clerk to the defendant, Brown, and all proceedings in reference to the sale to him be declared null and void, and for general relief.
These facts, (for such the statements of the hill must be taken to be on demurrer), in my judgment, make a proper case for the exercise by a court of equity of its *794 peculiar powers. The demurrer admits the complainant to be in possession of lapd which belongs to him, and he is entitled to the free, full and uninterrupted use and enjoyment of it, and without let or hindrance to-make sale of it if he desire to sell at its market value. The defendant, under color of law, but without valid claim, has caused a part of this land to be surveyed by an officer of the state, and then conveyed to him by another public officer. The deed of conveyance thus procured he has caused to be recorded in the-county in which the land lies, and has thus proclaimed to the world that he is entitled to one hundred and fifty acres of the complainant’s land. Vain would be-the attempt of the complainant to make sale of his land except at a sacrifice, if, indeed, he could sell at any price. Who would purchase it at its true value? Men do not generally wish to buy law-suits, and when they purchase land at a full price they expect a clear title. The complainant, to be sure, might point to his deed and his possession under it, but he stands confronted with the recorded deed of the defendant and his claim under it to more than half of the complainant’s land. It is not to be doubted that this is a serious injury to the complainant’s rights, and a grievance that calls for redress. What redress is he entitled to, and how and where is he to get it? His-“.remedy, if any,” says the circuit judge in his decree “is at law, not in a court of equity.” What remedy has he at law ? He is in possession of the property, and cannot bring ejectment against the claimant to try the title, and the claimant is content to stand off for-the present and not bring an action against him. Code of 1878, ch. 131, § 5.
If the defendant when he had the survey, and procured a deed for the one hundred and fifty acres, knew *795 that it was the complaioant’s land, he committed a fraud. If he did not know it he made a mistake. Surely, in either case, the complainant is entitled to relief. The mischief springs from the defendant’s recorded deed. As long as that stands the injury must continue. It is a cloud that overshadows the complainant’s title, and materially impairs, if it does not wholly destroy, its market value. If the defendant will not release, a cancellation of the deed by judicial authority furnishes the only adequate relief. A court of law cannot give this relief, but a court of equity can, and should give it.
Treating of the delivery up, cancellation or rescission of agreements, securities, deeds, or other instruments, Judge Story says: “It is obvious that the jurisdiction, exercised in cases of this sort, is founded upon the administration of a protective or preventive justice. The party is relieved upon the principle, as it is technically called, quia timet; that is, for fear that such agreements, securities, deeds, or other instruments, may be vexatiously or injuriously used against him, when the evidence to impeach them may be lost; or that they may now throw a cloud or suspicion over his title or interest.” 1 Story Eq., § 694.
Again he says: “Whatever may have been the doubts or difficulties formerly entertained upon this subject, they seem by the modern decisions to be fairly put at rest; and the jurisdiction is now maintained in the fullest extent. And these decisions are founded on the true principles of equity jurisprudence, which is not merely remedial, but is also preventive of injustice. If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for a sinister purpose. If it íb a negotiable instrument, it may be- *796 used for a fraudulent or improper purpose, to the injury of a third person. If it is a deed purporting to " convey lands or other hereditaments, its existence in an uncancelled state necessarily has a tendency to throw a cloud over the title.” Idem, § 700.
Other authorities to the same effect are abundant. A few only need be cited. See Kerr on Injunctions 597; Bissell v. Kellogg, 60 Barb. (N. Y.) 617, (cited 3 U. S. Digest, N. S. 136); Lee v. Ruggles, 62 Ill. 427, (5 U. S., Digest, N. S. 196); 2 Lead. Cas. in Eq. (ed. 1877), part 2, top p. 1355, notes to Karl of Oxford’s case, and authorities there cited.
But I have not been able to find the law applicable to the case in judgment anywhere stated so well as in a recent work by Judge Cooley. Speaking of quieting title to land after sale for taxes, he says: “If land has been actually sold and conveyed for a tax, the original owner remaining in possession may have the validity of the sale tested by a bill in equity, filed for the purpose of quieting his title. This is the general rule. Courts of law cannot give relief in such a case, as he cannot bring ejectment, being himself in possession; no other form of action is given by the common law for such a case. And where the case has proceeded to sale and conveyance, even though the defects in the title are apparent on the record, and the deed is not prima facie evidence of title, it may perhaps be possible to distinguish the case from one in which the void proceedings are only impending. While they are in progress, it may be assumed that the officers will pause in their illegal action before any sale is reached; but when the proceedings have reached that point, and a conveyance has been given, which, though void, may affect the market value of the land, there would seem to be no very conclusive reason why equity should not *797 interfere and decree a cancellation of the void claim. If the tax purchaser has entered into possession of the land, the original owner has an adequate remedy by suit at law in ejectment; and to this he must resort. When neither party has actual possession, if the statute has authorized the action of ejectment to be brought on the constructive possession, which either may claim by virtue of the conveyances which he holds, the suit at law would appear to be the adequate remedy in such a case also.” Cooley on Taxation 544, 545, and the cases there cited.
The decision of this court in Hale v. Penn’s heirs, 15 Gratt. 261, as I understand it, fully accords with the doctrine laid down by Judge Cooley, supra. It does not appear from the statement of that case made by the reporter, nor in the opinion of the court delivered by Judge Anderson, whether Penn’s heirs, the complainants in the suit, were in the possession of the land which they sought to redeem; but it seems to be so implied. It must have been so, I take it; for, if Hale, the tax purchaser, had been in possession, the ‘ complainants would have had a plain remedy at law in an action of ejectment against him, the deed under which he claimed not being prima facie evidence of title, and furnishing no impediment to the recovery in such action. In that case, as in this, the claimant purchased one parcel of land, and surveyed and got a deed for a different parcel. There seems to be this difference in the two eases: in the former, the defect of title, it would appear, was plainly shown by the official return of the sheriff on record; while in the present case, the invalidity of the title would have to be established in the main by evidence dehors the record. The equitable jurisdiction, therefore, exercised in Hale v. Penn’s heirs must have been based on *798 the assumption that the deed to the purchaser, although defective and void, cast a cloud upon the title of the owners to their prejudice, which they had a right to have removed. Hence this court, while affirming the decree of the court below which overruled the deed, amended it by directing a reconveyance of the title to the owners, “ in order to preserve to them their unbroken record of title.”
In a case decided by this cotfrt as early as 1810, it seems to have been held that if land be listed by the commissioner of the revenue to a wrong person, sold by the .sheriff as the property of such person, and conveyed by deed to the purchaser, the proper .resort of the rightful owner for relief is to a court of equity, by which the deed may be cancelled and a release or conveyance of the land decreed. Yancey v. Hopkins, 1 Munf. 419. It was further held in that case that an authority given by law to any officer, whereby the estates or interests of other persons may be forfeited or lost, must be strictly pursued in every instance.
Applying the principles of these authorities to this case, it is manifest the court below erred in sustaining the appellee’s demurrer to the amended bill.
I am of opinion, for the reasons stated, that the de•cree of the circuit court of Patrick county should be reversed and annulled; and that the cause should be remanded to the said circuit court, with liberty to the appellee to file his answer to the amended bill, if so advised, to each party to take testimony in the cause, if desired, and that the cause be otherwise proceeded in to a final decree.
The decree was as follows:
This day came again the parties by their counsel, *799 :and the court having maturely considered the transcript of the record of the decree aforesaid, and arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decree is wholly erroneous; it is therefore decreed and ordered, that the said decree be reversed and annulled, ■and that the appellant recover against the appellee his costs by him expended in the prosecution of his appeal aforesaid here; arid this court proceeding to render such decree as the said circuit court ought to have rendered, it is further decreed and ordered, that the demurrer of the defendant to the complainant’s amended bill be overruled, and that this cause be remanded to the said circuit court, with liberty granted to the defendant to file in the said court his answer to said amended bill, if he be so advised, and with directions that the cause be otherwise proceeded in to final decree : which is ordered to be certified to the said circuit court of Patrick county.
Decree reversed.