211 Cal.App.2d 359 (1962)
Estate of ELIZABETH CLOGG SWALLOW, Deceased. ELIZABETH K. METCALF, Claimant and Appellant,
v.
DORIS E. KILLIAN, as Executrix, etc., et al., Claimants and Respondents.
Civ. No. 163. 
California Court of Appeals. Fifth Dist. 
Dec. 26, 1962.
 Sherman Rogers and J. R. Goodbody for Claimant and Appellant.
 No appearance for Claimant and Respondent Killian.
 Burford, Hubler & Burford and Gaylord N. Hubler for Claimant and Respondent Albert H. Swallow.
 BROWN, J.
 Appellant appeals from a judgment entered in an heirship proceeding brought to construe the language in the holographic will of the testatrix.
 The testatrix, who died on April 17, 1960, left a holographic will dated January 10, 1942, and the pertinent parts involved in this appeal are as follows:
 "I direct that my daughter Doris E. Killian be given my home (separate property) at 715 North "E" Street. This is meant to include the entire property and that any money in the bank at the time of my death be used to pay the mortgage now held by Clara Cole. I direct that any money owed me be divided equally between my three children and that 10.00 be given my husband Albert H. Swallow and he be given 30 days to vacate the property at 715 North "E" St. as I have always paid my own bills and feel I owe him nothing. I direct that my personal property be divided between my daughters Elizabeth K. Metcalfe and Doris E. Killian and that before anything is ever sold Fred E. and Edna Stone are given the choice of it as a gift from me. I do not want my son or his children to ever have any of my personal property but would like Mignon G. Gilbert, whom I dearly love, to have such keepsakes of mine as will be of comfort to her."
 "* * *"
 "As my husband is legally responsible for my bills, I direct that he pay them as I have never used our community money for even doctor bills."
 The appellant and the executrix are children of the decedent by a former marriage.
 Upon the hearing, at which no testimony was presented, the issue being strictly a matter of construction of the will, the court, in effect, found that the will did not include disposition *362 of any interest in community real or personal property; that the term "money" was used in its literal sense; that "personal property" meant personal effects, furnishings and other tangible property in and about the testatrix' home; and that the words "would like" as to Mignon G. Gilbert were expressions of desire rather than disposition; that the language so used did not disinherit the husband or other persons as to all of the property of the decedent; and that she did not intend to dispose of all of her property by this will, and the court made its conclusions of law accordingly.
 [1] Presumptions to the effect that a will is to be construed so intestacy or partial intestacy is to be avoided are set forth in Probate Code sections 102 and 103, and are discussed in Estate of Kuttler, 185 Cal.App.2d 189 [8 Cal.Rptr. 160], at page 197, where it is said:
 " 'There is a presumption against intestacy, total or partial, which is very strong. "There is a presumption that a testator intends to dispose of all of his property in the absence of controlling language in the will to the contrary. [Citations.] In construing the will it was proper for the trial court to take this presumption against partial intestacy into consideration. [Citations.]" (Estate of Schuster, supra, 137 Cal.App.2d 125, 130 [289 P.2d 847].)' " (Estate of Kuttler, 160 Cal.App.2d 332, 345-346 [325 P.2d 624].)
 [2] However, in the Estate of Klewer, 124 Cal.App.2d 219 [268 P.2d 544, 41 A.L.R.2d 941], the court recognizes the presumption against intestacy, and said at page 223, " 'A court's inquiry in construing a will is limited to ascertaining what the testator meant by the language which was used' " and if such language does result in intestacy, the court must hold that intestacy was intended. [3a] " 'A testator has the right to make a will which does not dispose of all of his property but leaves a residue to pass to his heirs under the law of succession. ... To say that because a will does not dispose of all of the testator's property it is ambiguous and must be construed so as to prevent intestacy, either total or partial, is to use a rule of construction as the reason for construction.' (Estate of Beldon, 11 Cal.2d 108, 112 [77 P.2d 1052]; [and other citations].)"
 [4] "Courts are not permitted in order to avoid a conclusion of intestacy to adopt a construction based on conjecture as to what the testator may have intended, although not expressed." (Estate of Hoytema, 180 Cal. 430, 432 [181 P. *363 645]; Estate of Halsell, 133 Cal.App.2d 665, 671 [284 P.2d 821].)
 [5] The construction of the sentences in the will directing that personal property be divided between her daughters and before anything is sold to allow Mr. and Mrs. Stone to make a selection of the same as a gift as well as not wanting her son to have any of the personal property but to allow Mignon G. Gilbert to have such keepsakes as will be of comfort to her clearly indicates that the testatrix was dealing only with what is commonly known and accepted as miscellaneous personal property such as furniture and keepsakes. This phrase is discussed with regard to a "rosewood settee" and "personal things" in the Estate of Klewer, supra, 124 Cal.App.2d 219, and 41 A.L.R.2d 941.
 [6] We think under no interpretation could it be assumed that the testatrix intended for Mr. and Mrs. Stone to select any real estate or cash which she may have had and that the use of the word "keepsakes" does not indicate any wish to include anything other than what the term itself means, that is, a token memento of the giver.
 The words "my belongings" were considered on a much broader scale in the Estate of Kuttler, supra, 185 Cal.App.2d 189, in that there was no other discussion of property in the will except by that term and in that case the testatrix had made certain statements to her lawyer as to her special desire to disinherit her grandchildren.
 The words "all my personal belongings" in the Estate of Olson, 144 Cal.App.2d 694 [301 P.2d 501], are held to include all of the estate in a broad sense.
 In the present case, we agree with the lower court, as stated in its memorandum opinion, that "The words 'personal property' when read in context in the instrument appear to have been used in their popular sense to mean personal effects, furniture, furnishings and other tangible personal property in and about the testatrix' home."
 [7] The testatrix was not an attorney and from her document indicates that she had no legal advice, but in any event she was somewhat familiar with some legal terms. She discusses her separate property, leaving it to her two daughters; she wanted the mortgage paid off; she talked about money owed her; she left $10 to her husband; she discussed personal property and further, knew that her husband was responsible for her bills and that she had never used any of the community property; and it appears from her writings *364 that she did not want her husband to get any of her separate property. It can be concluded that she was not intending to dispose of any of the ranch property or stock described in the petition to determine the heirship and that she intentionally made no disposition of it to her husband.
 [8] It is recognized that a clause disinheriting a person does not prevent him from taking property by the laws of intestacy which is not disposed of by the will. In the Estate of Dunn, 120 Cal.App.2d 294 [260 P.2d 964], the children, grandchildren or other descendants were excluded and the residuary clause favored an unrelated person who predeceased the testatrix. This legacy therefore lapsing, the court held that the testatrix died intestate as to that portion of the estate which would then go to all the heirs at law. To the same effect, this court held in the Estate of Holtermann, 206 Cal.App.2d 460 [23 Cal.Rptr. 685], that where the daughter contested the will and became disinherited, she was nevertheless allowed to succeed by the laws of intestacy to that portion of the residue which failed as being in excess of certain allowed charitable bequests. (See also Estate of Hittell, 141 Cal. 432 [75 P. 53]; and Estate of Sessions, 171 Cal. 346 [153 P. 231].) Such extensions go only to the property disposed of by will and where no residue becomes subject to the laws of succession.
 Appellant cites the case of the Estate of Bateman, 205 Cal.App.2d 792 [23 Cal.Rptr. 445], but this case can be distinguished in that it was clear that the testator's residue included property formerly held in joint tenancy where the other joint tenant was deceased and thus this property would go to the legatee. The joint tenancy property would not go by intestacy regardless of whether or not the joint tenancy had been terminated. The legatee would receive this property as part of the residue inasmuch as the decedent died without any joint tenancy property.
 [9] The doctrine of implied gifts, as suggested by appellant, has not been recognized in California, though discussed in Estate of Walkerly, 108 Cal. 627 [41 P. 772, 49 Am.St.Rep. 97]. We think this case can be distinguished from the Estate of Kuttler, supra, 185 Cal.App.2d 189, because of the lack of intent on the part of the testatrix to dispose of her entire estate, and the failure of the testatrix to expressly cut off her husband in the will. (Estate of Kuttler, supra, p. 202.)
 While this problem concerns itself with the possible application to the community property, the amount of which is *365 not one of the issues before us, nevertheless, we have to consider whether or not the testatrix by this will was disposing of all of her property or just her separate property or portions of the community property.
 [10] As stated above, we do not think the term "personal property" can be intended to include a residual bequest of the property, while "all my own property" or "all my personal property" may be properly considered as a residuary clause.
 [11] "Money" has been construed to include all property, whether real or personal (Estate of Stadler, 177 Cal.App.2d 709, 712 [2 Cal.Rptr. 515]), but we doubt whether the words "money owed" can be construed as "money owned" to include real estate or stocks and bonds, though a bank does owe its depositors. [12] The word "money" has been considered to be essentially ambiguous unless there is in the context of the will something to indicate that the testator intended a more extended meaning; e.g., " 'money left over when Settled' was meant to refer to the remainder of the estate and not the remainder of the cash." (Estate of Stadler, supra, 177 Cal.App.2d 709, 712, 713.) In that case the will was written by a person with no legal training and the court found that it would be strange if she did not intend to dispose of her entire estate.
 [13] It is stated in 53 California Jurisprudence 2d, Wills, section 373, pages 647-648: "To the extent the construction of a will is a question of law, and particularly when the determination in the trial court was made without the aid of extrinsic evidence, there was no conflict in the evidence, or the trial court's determination was made on incompetent evidence, it is the duty of the appellate court to construe the will. The appellate court in such a case is not bound by the trial court's construction, its function being to construe the will independently of any presumption of correctness of the decision appealed from. It may thus reach a conclusion contrary to that of the trial court, although it is standard practice in appellate courts, where the construction given a will by the trial court is reasonable and appears to be consistent with the testator's intent, not to substitute another construction though the other construction might seem equally tenable."
 In Estate of Halsell, supra, 133 Cal.App.2d 665, the court quoting from Estate of Northcutt, 16 Cal.2d 683, 690 [107 *366 P.2d 607], said at page 670: " 'Furthermore, the construction placed by the probate court on the terms of the will is not unreasonable. And the rule is well settled that where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally tenable with that accorded by the trial court."
 [3b] And the court in Estate of Halsell, supra, quoting from Estate of Beldon, 11 Cal.2d 108, 112, 113 [77 P.2d 1052], states at page 671: " 'To say that because a will does not dispose of all of the testator's property it is ambiguous and must be construed so as to prevent intestacy, either total or partial, is to use a rule of construction as the reason for construction. But a will is never open to construction merely because it does not dispose of all of the testator's property. ... Only where there is an ambiguity may the rule which directs a court to prefer that mode of interpretation which prevents intestacy, be applied. ( 102, Prob. Code.) A court may not, under the guise of construction, make a will for a testator to take the place of the one made by him if its intent is plain. And this is so regardless of the consequences of the testator's will.' "
 The judgment is affirmed.
 Conley, P. J., concurred.
 Stone, J., deeming himself disqualified, did not participate.